IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

U.S. DISTRICT COURT

2010 JAN 22  P 1: 25

Samad H. Castro

   Plaintiff(s),

       v.

Bayonne Housing Authority,

   Tricia O'Brien,             Civil Action No. _10-403 (DRD)_

   John T. Mahon

   Defendant(s).

## COMPLAINT

COMES NOW hereby the plaintiff[s], Samad H. Castro,
(hereinafter plaintiff) appearing Pro Se, and for a complaint against
the defendant[s] above named, states, alleges, and avers as follows:

### JURISDICTION

1. This Court has subject matter jurisdiction under 28 U.S.C. sections
   1331 and 1343.

2. This Court has subject matter jurisdiction under 42 U.S.C. section
   3613(a)

3. This action is commenced pursuant to 28 U.S.C. sections 2201, 2202
   and 42 U.S.C., section 1983.

4. This action is also commenced pursuant to 42 U.S.C. section 3613

## GENERAL ALLEGATIONS

1. The plaintiff(s), Samad H. Castro is a citizen of the State of New
   Jersey, United States of America.

2. Venue is proper under 28 U.S.C. § 1391 because the actions giving
   rise to the plaintiff allegations occurred in the District of
   New Jersey, the subject entity is located in the District of
   New Jersey, and the Defendant(s) resides in and does business in the
   District of New Jersey.

3. Upon information and belief, defendant(s), Bayonne Housing Authority,
   Tricia O'Brien and John T. Mahon at all times pertinent to the
   complaint have owned and/or operated a public entity under the
   Fair Housing Amendments Act of 1988, Title II and III of
   Americans with Disabilities Amendments Act of 2008 and also Section
   504 of the Rehabilitation Act of 1973. Defendant(s)' entity
   establishment is the Bayonne Housing Authority at 549 Avenue A,
   Bayonne, New Jersey 07002. (a public housing authority)

4. This complaint is brought by the aggrieved person, (the plaintiff),
   to enforce the provisions of Title II and Title III of the
   Americans with Disability Amendments Act of 2008,
   42 U.S.C. § 12101, 42 U.S.C. § 12181 - 12189 (Title II)
   42 U.S.C. § 12131 - 12165 (Title III)

5. This complaint is brought by the aggrieved person, (the plaintiff),
   to enforce the provisions of the Rehabilitation Act of 1973,
   29 U.S.C. § 701, § 794

6. This complaint is brought by the aggrieved person,
   (the plaintiff), to enforce the provisions of Title VIII of the
   Civil Rights Act of 1968 (the Fair Housing Act), as amended by
   the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, et seq.

A. Defendant(s) has violated Title II and III of the Americans with
   Disabilities Amendments Act of 2008, 42 U.S.C. § 12101,
   42 U.S.C. § § 12181 - 12189 (Title II),

Page: 3

42 U.S.C. §§12131 - 12165 (Title III) by discriminating against

persons on the basis of disability and subjecting persons with

disabilities to discrimination, from the full and equal enjoyment

of, services, privileges, advantages, accommodations, and has denied

persons with disabilities such opportunities.

Defendant(s) operates a public entity or any such entity and place

of public accommodation and has denied or otherwise made a failure

and neglected to provide to persons with disabilities a

reasonable accommodation or modification in policies, practices, or

procedures, when such action are necessary to afford such services,

privileges, advantages, or accommodations to individuals with

disabilities. Title III of the ADA prohibits discrimination on the

basis of disability in the full and equal enjoyment of the goods,

services, facilities, privileges, advantages, or accommodations of

any place of public accommodation by any person who owns, operates,

or leases a place of public accommodation. 42 U.S.C. § 12182(a).

Defendant(s)' establishment is a place of public accommodation

within the meaning of Title III because it is of other

"service establishment." 42 U.S.C. § 12181(7)(F).

Page: 4

As the operators and/or owners of such establishment, defendant(s) is a public accommodation within the meaning of Title III, 42 U.S.C. § 12181(7)(F) and is therefore subject to the nondiscrimination requirements of Title III of the ADA. Title III also prohibits excluding or otherwise denying equal goods, services, facilities, and accommodations to an individual because of the known disability of that individual's spouse or other related or associated individual. 42 U.S.C. § 12182(b)(1)(E).

B.  Defendant(s) has violated the Rehabilitation Act of 1973, 29 U.S.C. § 701, § 794(a), by discriminating against persons and excluding persons on the basis of disability and subjecting him to discrimination, from use of program benefits and participation in connection with the defendant(s) housing program which receives federal financial assistance.

C.  Defendant(s) has also violated Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act), as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, et seq.

Page: 5

In violation of 42 U.S.C. § 3604 (c) and refusing to make reasonable
accommodations in rules, policies, practices, or services, when such
accommodations is necessary to afford such person equal opportunity
to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604 (3)(b)

D.  Likewise, and also for the purposes of subsection (c) above this
paragraph, the defendant(s) is also engaged in the business of
selling or renting dwellings as defined under 42 U.S.C. § 3603 (c)
and therefore with respect to the defendant(s)' services, activities
or programs thereof, such services, activities, or programs thereof
likewise would also be with respect to the sale or rental of a
dwelling in the same manner.

7. Plaintiff is an individual with disabilities within the meaning of
the ADA. 42 U.S.C. § 12102, that has physical, emotional and mental
impairments and suffers from and has experienced life-threaten
trauma. Plaintiff has catastrophic injuries to his lower left-side
face area, which has shattered, permanently damaged and significant
amount of loss of chine bone and has sustained permanent nerve
damages to his lower facial jaw and chine bone area as a result of

the injuries. In addition, plaintiff sustained significant permanent
injury and nerve damages to his upper left-side chest area, just a
few inches above his heart. Plaintiff also has been diagnosed with
post traumatic stress disorder and to date he is still emotionally
and mentally affected by the tragedy he experienced and the nature of
such tragedy and injuries, among other things. As a result, plaintiff
physiological and physical conditions are physical or mental
impairments, and they substantially limit his performance of one or
more major life functions, such as sleeping, eating, lifting,
bending, performing manual tasks, caring for oneself and working.
Plaintiff also has a record of having a disability. Plaintiff
verbally explained and gave written notice to defendant(s) that he is
urgently required to undergo more complex surgeries arising from his
impairments and also submitted specific written documentation from
his medical surgeons, clear evidence indicating the same. Plaintiff
has also explain to defendant(s) and mailed to defendant(s) written
notice of his immediate housing needs, which could have been easily
accommodated, and that in his disabilities, in order to safely and
effectively undergo or rehabilitate from such more complex surgeries

Page: 7

that he needs self-sufficiency independence and certain
accommodations such as an exemption from the defendant(s)' housing
program's waiting list, to immediately, fully participate in,
and equally enjoy the benefits of the defendant(s)'
Housing Choice Voucher Program.
All Plaintiff want, but for the humiliating discriminatory conducts
by the defendant(s), was to be reasonably accommodated as it is
necessary in his disabilities, to immediately participate in, and
equally enjoy the privileges and benefits of the defendant(s)'
Housing Choice Voucher Program, but the establishment and it's
services is inaccessible to persons with disabilities.

8. Nevertheless, defendant(s) has not eliminated it's discriminatory
   practices and institutional barriers that prevents persons with
   disabilities an opportunity from receiving accommodations, equally
   participating, enjoying in or benefiting from the housing services
   of the defendant(s)'  Public Housing Authority's establishment.

9. To assist businesses with complying with the ADA, Congress has
   enacted a tax credit for small businesses and a tax

deduction for all businesses. See Section 44 and 190 of the IRS

Code. An eligible small business is allowed a tax credit equal

to 50% of the amount of the eligible access expenditures between

$250 and $10,500 for any tax year. A business that removes

architectural barriers e.g., by modifying ramps, grading, entrances,

doors and doorways, may receive an annual tax deduction

of up to $15,000 each year.


10. On July 26, 1990, Congress enacted the Americans with Disabilities

Act, 42 U.S.C. section 12101, et seq., and amended the Act in 2008,

establishing the most important civil rights law for persons with

disabilities in our country's history.


The Congressional statutory findings include:

Sec. 12101. Findings and purpose
(a) Findings
The Congress finds that
(1) physical or mental disabilities in no way diminish a person's right
to fully participate in all aspects of society, yet many people with
physical or mental disabilities have been precluded from doing so
because of discrimination; others who have a record of a disability or
are regarded as having a disability also have been subjected to
discrimination;
(2) historically, society has tended to isolate and segregate

Page: 9

individuals with disabilities, and, despite some improvements, such

forms of discrimination against individuals with disabilities continue
to be a serious and pervasive social problem;
(3) discrimination against individuals with disabilities persists in
such critical areas as employment, housing, public accommodations,
education, transportation, communication, recreation,
institutionalization, health services, voting, and access to public
services;
(4) unlike individuals who have experienced discrimination on the basis
of race, color, sex, national origin, religion, or age, individuals who
have experienced discrimination on the basis of disability have often
had no legal recourse to redress such discrimination;
(5) individuals with disabilities continually encounter various forms of
discrimination, including outright intentional exclusion, the
discriminatory effects of architectural, transportation, and
communication barriers, overprotective rules and policies, failure to
make modifications to existing facilities and practices, exclusionary
qualification standards and criteria, segregation, and relegation to
lesser services, programs, activities, benefits, jobs, or other
opportunities;
(6) census data, national polls, and other studies have documented that
people with disabilities, as a group, occupy an inferior status in our
society, and are severely disadvantaged socially, vocationally,
economically, and educationally;
(7) the Nation's proper goals regarding individuals with disabilities
are to assure equality of opportunity, full participation, independent
living, and economic self-sufficiency for such individuals; and
(8) the continuing existence of unfair and unnecessary discrimination
and prejudice denies people with disabilities the opportunity to compete
on an equal basis and to pursue those opportunities for which our free
society is justifiably famous, and costs the United States billions of
dollars in unnecessary expenses resulting from dependency and
nonproductivity.
(b) Purpose
It is the purpose of this chapter
(1) to provide a clear and comprehensive national mandate for the
elimination of discrimination against individuals with disabilities;
(2) to provide clear, strong, consistent, enforceable standards
addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

Sec. 12101 note: Findings and Purposes of ADA Amendments Act of 2008, Pub. L. 110-325, § 2, Sept. 25, 2008, 122 Stat. 3553, provided that:

(a) Findings

Congress finds that -

(1) in enacting the Americans with Disabilities Act of 1990 (ADA), Congress intended that the Act "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and provide broad coverage;

(2) in enacting the ADA, Congress recognized that physical and mental disabilities in no way diminish a person's right to fully participate in all aspects of society, but that people with physical or mental disabilities are frequently precluded from doing so because of prejudice, antiquated attitudes, or the failure to remove societal and institutional barriers;

(3) while Congress expected that the definition of disability under the ADA would be interpreted consistently with how courts had applied the definition of a handicapped individual under the Rehabilitation Act of 1973, that expectation has not been fulfilled;

(4) the holdings of the Supreme Court in Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999) and its companion cases have narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect;

(5) the holding of the Supreme Court in Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002) further narrowed the broad scope of protection intended to be afforded by the ADA;

(6) as a result of these Supreme Court cases, lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities;

(7) in particular, the Supreme Court, in the case of Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002), interpreted the term "substantially limits" to require a greater degree of limitation than was intended by Congress; and

(8) Congress finds that the current Equal Employment Opportunity
Commission ADA regulations defining the term "substantially limits" as
"significantly restricted" are inconsistent with congressional intent,
by expressing too high a standard.
(b) Purposes
The purposes of this Act are-
(1) to carry out the ADA's objectives of providing "a clear and
comprehensive national mandate for the elimination of discrimination"
and "clear, strong, consistent, enforceable standards addressing
discrimination" by reinstating a broad scope of protection to be
available under the ADA;
(2) to reject the requirement enunciated by the Supreme Court in Sutton
v. United Air Lines, Inc., 527 U.S. 471 (1999) and its companion cases
that whether an impairment substantially limits a major life activity is
to be determined with reference to the ameliorative effects of
mitigating measures;
(3) to reject the Supreme Court's reasoning in Sutton v. United Air
Lines, Inc., 527 U.S. 471 (1999) with regard to coverage under the third
prong of the definition of disability and to reinstate the reasoning of
the Supreme Court in School Board of Nassau County v. Arline, 480 U.S.
273 (1987) which set forth a broad view of the third prong of the
definition of handicap under the Rehabilitation Act of 1973;
(4) to reject the standards enunciated by the Supreme Court in Toyota
Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002),
that the terms "substantially" and "major" in the definition of
disability under the ADA "need to be interpreted strictly to create a
demanding standard for qualifying as disabled," and that to be
substantially limited in performing a major life activity under the ADA
"an individual must have an impairment that prevents or severely
restricts the individual from doing activities that are of central
importance to most people's daily lives";
(5) to convey congressional intent that the standard created by the
Supreme Court in the case of Toyota Motor Manufacturing, Kentucky, Inc.
v. Williams, 534 U.S. 184 (2002) for "substantially limits", and
applied by lower courts in numerous decisions, has created an
inappropriately high level of limitation necessary to obtain coverage
under the ADA, to convey that it is the intent of Congress that the
primary object of attention in cases brought under the ADA should be
whether entities covered under the ADA have complied with their
obligations, and to convey that the question of whether an individual's

impairment is a disability under the ADA should not demand extensive analysis; and

(6) to express Congress' expectation that the Equal Employment Opportunity Commission will revise that portion of its current regulations that defines the term "substantially limits" as "significantly restricted" to be consistent with this Act, including the amendments made by this Act.

Sec. 12102. Definition of disability

As used in this chapter:

(1) Disability

The term "disability" means, with respect to an individual

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment (as described in paragraph (3)).

(2) Major Life Activities

(A) In general

For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

(B) Major bodily functions

For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

(3) Regarded as having such an impairment

For purposes of paragraph (1)(C):

(A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

(B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

(4) Rules of construction regarding the definition of disability

The definition of "disability" in paragraph (1) shall be construed in accordance with the following:

(A) The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.

(B) The term "substantially limits" shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008.

(C) An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability.

(D) An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.

(E)

(i) The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as

(I) medication, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aids and cochlear implants or other implantable hearing devices, mobility devices, or oxygen therapy equipment and supplies;

(II) use of assistive technology;

(III) reasonable accommodations or auxiliary aids or services; or

(IV) learned behavioral or adaptive neurological modifications.

(ii) The ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity.

(iii) As used in this subparagraph

(I) the term "ordinary eyeglasses or contact lenses" means lenses that are intended to fully correct visual acuity or eliminate refractive error; and

(II) the term "low-vision devices" means devices that magnify, enhance, or otherwise augment a visual image.

Sec. 12103. Additional definitions

As used in this chapter

(1) Auxiliary aids and services

The term "auxiliary aids and services" includes

(A) qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments;

(B) qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments;

(C) acquisition or modification of equipment or devices; and

(D) other similar services and actions.

(2) State

The term "State" means each of the several States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Virgin Islands of the United States, the Trust Territory of the Pacific Islands, and the Commonwealth of the Northern Mariana Islands.

## FURTHER ALLEGATIONS

1. The defendant(s) (Bayonne Housing Authority) whose is a

   "public entity" as that term defined under 42 U.S.C. § 12131 (1) is

   also a place of public accommodation and receives federal grants

   and assistance; The defendant(s) is committed to unlawfully

   denying, excluding and otherwise making unavailable to the

   plaintiff whose has physical and mental disabilities, such

   reasonable accommodations, and the opportunity to equally

   participate in, and benefit from it's Housing Choice Voucher

   Program and has discriminated against an individual with

   disabilities on the basis of their disabilities in connection with

the operation of the defendant(s)' housing authority's housing

programs, services and activities. The defendant(s) has also

refused the disabled plaintiff, and otherwise made unavailable a

reasonable accommodation, where necessary, so that the housing

program is readily accessible and achievable for immediate use and

enjoyment by the disabled plaintiff. Furthermore, the defendant(s)

has failed to comply with Title II and Title III of the ADA Act

and the ADA purposes and findings as congress amended 2008

(42 U.S.C. §§ 12101) and in that, unlawful violations of the

Americans with Disabilities Amendments Act as congress amended,

Section 504 Rehabilitation Act of 1973 [29 U.S.C. §701, §794(a)]

and Title VIII of the Civil Rights Act of 1968

(the Fair Housing Act), as amended by the Fair Housing Amendments

Act of 1988, (42 U.S.C. §3601, et seq.)


2. The plaintiff gave the defendant(s) along with his application to

   participate in their Housing Choice Voucher Program and an

   application for reasonable accommodation, also a letter dated

   September 10th, 2009 from his primary surgical physicians

explaining what caused the plaintiffs' physical impairments and the

rehabilitation requirements further regarding the plaintiffs'

disabilities. The plaintiff also submitted a letter dated September

2008 from the Social Security Administration stating that he is a

disabled individual, which was raised from the plaintiffs' record

of physical and mental impairments received when he encountered,

suffered and experienced life-threatening tragedy in April of 2008

that bring rises to his current impairments and disabilities. In a

October 2009 letter the disabled plaintiff tried to explain or

indicate to the defendant(s) in the best of his abilities, the needs

for reasonable accommodations, his current living situation,

and that as a disabled individual with unreconstructed physical

impairments, that he had more needed surgeries to undergo and that in

order to safely, effectively undergo or safely, and effectively

recover from such physical surgeries, that he requires and need

immediate participation in housing of his choice to have

an equal opportunity to participate in, and benefit from the housing

services of the defendant(s). Plaintiff also stated his need for a

safe and decent place to live under his mental and physical

conditions to equally enjoy a civic life outside of areas of

Page: 17

high poverty and crime neighborhoods. The defendant(s) failed to

provide the reasonable accommodation requested, where it has

been established and necessary to afford the plaintiff such

opportunity, services, benefits and privileges.


3. The plaintiff requested an exemption from the defendant(s)' Housing

   Choice Voucher Programs' waiting list which currently exceeds

   excessive years or impracticable waiting periods for persons with

   disabilities; so needed as a reasonable accommodation to avoid that

   such barrier and activity, the plaintiff made request for such

   accommodations, the defendant(s) at that time required plaintiff to

   fill out a "reasonable accommodation request form" and a

   "disability verification form". Defendant(s)' Tricia O'Brien verbally

   stated to the plaintiff, that, in order for the

   Bayonne Housing Authority to even consider or look over an

   application for a reasonable accommodation request, that that was the

   Housing Authority's appropriate administrative process for any

   individual wishing to receive a reasonable accommodation.

   Defendant(s)' Tricia O'Brien further stated to the plaintiff that,

after the forms were filled out and completed in it's entirety and the

plaintiffs' disability was verified that the Bayonne Housing Authority

would inform him through mail correspondence regarding it's decision

of plaintiffs' request for reasonable accommodation. Weeks later, the

plaintiff received that correspondence regarding his request for

reasonable accommodation. Plaintiff was injured not only by

the defendants willful and consistent discriminatory manner but by

the defendant(s) decisions as regarding plaintiffs' request for

reasonable accommodation. Plaintiff states that the corresponding

notice, dated December 25th, 2009 in paragraph three (3)

of the notice, decided and stated that "In concerning plaintiff

request for reasonable accommodation that the defendant(s) did verify

plaintiffs' disability but that the provider of the plaintiffs'

disability verification, however, did not submit any documents

verifying that his requested modifications/accommodations were related

to his disability and because so, that there was no reasonable

accommodation related to plaintiffs' disability that the defendant(s)

could act upon." Such corresponding notices and statements

were made in violation of the Fair Housing Amendments Act of 1988,

(42 U.S.C. § § 3601, et seq.) 42 U.S.C. § § 3604(c), and defendant(s)

knowingly, intentionally, willfully and unjustly refused and otherwise
made unavailable a reasonable accommodation and without regards to human
rights of others, had disregarded plaintiff reasonable accommodation
request in rules, policies, practices and services when such
accommodation is necessary to afford such person equal opportunity to
use and enjoy a dwelling, in violation of the Fair Housing Amendments
Act of 1988, (42 U.S.C. § § 3601, et seq.) 42 U.S.C. § 3604 (3)(b).
Also acting in total disregard for the Americans with Disabilities
Amendments Act of 2008 as amended, Congress findings and purposes.
The defendant(s) knew that an accommodation was more likely than not,
required, and that it could have been readily provided but however
failed to make that accommodation in a way that bespeaks more than
negligence and has elements of deliberateness by failing to consider a
disabled individual's needs.
Defendant(s) acted with reckless indifference to a human life and a
reckless indifference to the federally protected rights of others.


4. Plaintiff contends that after the defendant(s) use their
   administrative discretion and had already verified and been
   alerted that he in fact has a disability, that in itself

and therefore made to be known, is a record of impairment, or shows a
record of impairment, irregardless of the disability, and that the
defendant(s) in it's public positions of responsibility and
accountability, knew, or should have known from that point that it
had a "legal duty" to provide an accommodation to a individual with a
disability, but instead, on account of that duty, had purposely
failed to provide the legal duty known, needed and required by a
individual with a disability. Plaintiff also contends
that his "major life activities" affected, include sleeping, eating,
lifting, bending, performing manual tasks, caring for oneself and
working. Plaintiff suffers from limitation of these major life
activities, which arises from his physical, emotional and mental
impairments. By the time defendant(s) had verified that plaintiff had
a disability, defendant(s) had already perceived on the basis of the
plaintiffs' disability and his related association (spouse) that his
reasonable accommodation request would cause defendant(s) obviously
an unnecessary action to accommodate and because of his absence of
having or using auxiliary aids or services such as a wheelchair,
cane, or any other obvious or noticeable devices that most disabled
individuals today are perceived to have or need, decided that the

plaintiffs' disability did not constitute or meet a need for

reasonable accommodation, thereby dangerously and purposely

neglecting the underlying fact and other materiel base facts given,

that he is a individual with a disability, subjecting plaintiff to

harmful, unnecessary and unavoidable discrimination and by also

making a failure to take such steps as maybe necessary to ensure that

no individual with a disability is excluded, denied services,

segregated or otherwise treated differently than other individuals

because of the absence of auxiliary aids or services, in violation

of, Title III of the ADA Act as amended 2008,

42 U.S.C. § 12182(a)(2)(a)(iii) and excluding or otherwise denying

equal goods, services, benefits, privileges, and accommodations to an

individual because of the known disability of that individual's

spouse or other related or associated individual, in violation of,

42 U.S.C. §  12182(b)(1)(E). Upon information and belief, the

defendant(s) and their conduct described above and herein is

unconstitutional and a violation of plaintiff's rights guaranteed by

the United States Constitution under the 14th Amendment.

5.  The defendant(s) and their conduct has used, created and caused the
    imposition of eligibility criteria that screen out or tend to screen
    out an individual with a disability from fully and equally enjoying,
    services, privileges, advantages or accommodations and had also
    utilized administrative methods that has caused to have the effect
    of discrimination on the basis of disability in violation of
    Title III of the Americans with Disabilities Amendments Act
    as amended 2008, 42 U.S.C. § 12182 (2)(a)(i)(ii),
    42 U.S.C. § 12182 (a)(d)(i), which is a violation of Title II of
    the Americans with Disabilities Amendments Act as amended 2008,
    42 U.S.C. § § 12132. The defendant(s)' discriminatory conduct
    described in this complaint has caused the plaintiff unnecessary
    general damages, depression, mental anguish and emotion distress.
    Plaintiff contends that not only has he suffered general damages,
    but the extent to prepare and file this complaint in federal court
    on the basis of such complaint and its' effects has also caused him
    further unnecessary inconvenience, embarrassment and humiliation.

6.  Plaintiff has a reasonable likelihood of success on the merits of
    his claims that the defendant(s)' decision to deny, failure or
    otherwise make unavailable a reasonable modification or
    accommodation in policies or practices to a disabled person or cause
    to have the effect of discrimination by using certain
    administrative methods, using the imposition or application of
    eligibility criteria that screen out or tend to screen out an
    individual with a disability, subjecting to, and discriminating on
    the basis of disability against any such individual and their
    related association by any such entity while being a recipient of
    federal funding is in violation of law.

The defendant(s)' discriminatory conduct and unlawful violations is
also creating an undue delay in the plaintiff undergoing his
reconstructive surgeries for his physical impairments and he will
continue to suffer and will face a substantial threat of irreparable
damage or injury if the defendant(s) is not enjoined
and a preliminary injunction is not granted.

Page: 24

The balance of harms weighs in favor of the plaintiff seeking the preliminary injunction because he is a disabled individual and quickly needs to undergo multiple complex reconstructive surgeries and is in need of immediate housing in order for him to, safely and effectively undergo and safely and effectively recover from such complex surgeries in his disabilities. Whether state created, locally administered Programs or any program whose receives federal assistance for its' purposes, can be used, amended and replaced but with respect to an individual with disabilities, a human life and its natural needs or experiences, that in itself cannot be replaced.

Public policy and interest favors the preservation of the status quo, favors equal opportunity and accessibility for all individuals with disabilities, favors the prevention of homelessness, favors the safety and security of persons, favors the purposeful use of programs that are funded by the federal government for such purposes, favors observance of agency regulations and policies and thereby favors the granting of a preliminary injunction.

7.  Jury Trial Demanded


WHEREFORE, the plaintiff pray for judgment against defendant(s) and
each of them, as follows:


1.  For a temporary restraining order, a preliminary injunction, and a
    permanent injunction, all enjoining defendants, and each of them,
    directly and indirectly and their agents, servants, employees,
    successors and all persons acting under, in active concert with, or
    for them, from:


    a. Discriminating against plaintiff, his related association and any
       individuals with a disability and denying, excluding, or otherwise
       making unavailable, reasonable accommodations and modifications
       for any such individuals, to ensure that goods, services,
       facilities, benefits, privileges and accommodations are afforded
       to individuals with disabilities on a equal opportunity basis, in
       a nondiscriminatory manner.

Page: 26

b. Denying, refusing, or otherwise exclude, any individual with a disability from the full and equal participation and enjoyment of, benefits, services, privileges, advantages and accommodations in connection with the defendant(s)' housing programs and its' operations.

c. Using the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability.

d. Failing or refusing to take such affirmative steps as maybe necessary to restore, as nearly as practicable, the victim of the defendant(s)' past unlawful practices to the position they would have been in but for the discriminatory conduct.

e. Failing or refusing to adopt and implement a policy of nondiscrimination against persons with disabilities.

A. To make their housing programs, accommodations, benefits, privileges and services readily accessible for and usable by individuals with a disability on a nondiscriminatory equal opportunity basis.

Page: 27

B. To adopt and effectively implement an administrative plan that
fully comply with Title I, II and III of the
Americans with Disabilities Amendments Act of 2008,
Section 504 of the Rehabilitation Act of 1973 and
the Fair Housing Act as amended.

2.   For an order requiring defendants to show cause, if any they have,
why they should not be enjoined as hereinafter set forth, during
the pendency of this action; and why a preliminary injunction
should not be issued.

3.   For compensatory damages in the sum of $ 50,000 to compensate
plaintiff for the discrimination experienced, plus damages in such
further sums as may be sustained and as are ascertained before
final judgment herein;

4.   For award of applicable attorney fees herein incurred;

5.   Waive the requirement of the payment of security.

6. An award of punitive damages because of the intentional and willful

   nature of defendants conduct pursuant to 42 U.S.C. sec. 3613 (c)(1)

   for the violation of 42 U.S.C. sec. 3601, et seq.


7. order such other further relief as the court deems proper and as the

   interest of justice may require.


I declare under the penalty of perjury that everything stated herein is
true and true to the best of my knowledge, information and belief and is
brought grounded in good faith.



                    Respectfully Submitted,


                                                            01/22/2010


                    Samad H Castro




         Date: January 22, 2010                    Page: 29

Pro Se Representative:   Samad H Castro

238 Tremont Avenue
East Orange, New Jersey
07018


Email:        moddlife@gmail.com      Phone:        973-676-1502