<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SAMAD H. CASTRO, | : | |
| | : | Civ. No. 10-403(DRD) |
| Plaintiff, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| BAYONNE HOUSING AUTHORITY, | : | |
| TRICIA O'BRIEN, JOHN T. MAHON, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

Mr. Samad H. Castro
238 Tremont Avenue
East Orange, NJ 07018
    *Pro Se*

DeCotiis, Fitzpatrick & Cole, LLP
Glenpointe Centre West, Suite 31
500 Frank W. Burr Boulevard
Teaneck, NJ 07666
BY:   Dawn Attwood, Esq.
       Irene Stavrellis, Esq.
       Attorneys for Defendants
       City of Bayonne Housing Authority,
       John Mahon and Tricia O'Brien

**Debevoise, Senior District Court Judge**

      On January 22, 2010 Plaintiff, Samad H. Castro, filed a complaint against the Bayonne Housing Authority ("BHA") and two of its officers, Tricia O'Brien and John T. Mahon. He suffers from multiple serious emotional and physical disabilities and will be required to undergo additional complex surgeries arising from his impairments. He alleges that Defendants unlawfully discriminated against him on account of his disabilities when, upon his request for a

Section 8 Housing Voucher, it failed to put him at the head of the applicant list.

Plaintiff moved for a preliminary injunction compelling Defendants "to provide him immediately, an exemption or exclusion from the defendants' Housing Choice program waiting list, a two (2) bedroom Housing Choice Voucher."  A hearing was held on April 23, 2010.

### I.  Background

The Section 8 Housing Choice Voucher Program ("HCVP") is a federal government program for assisting low income families in obtaining affordable housing.  Participants choose housing that meets the requirements of the program.  Housing choice vouchers are administered locally by public housing agencies, ("PHAs") such as BHA or through the New Jersey Department of Community Affairs.  The PHAs receive federal funding from the United States Department of Housing and Urban Development ("HUD") to administer the voucher program.  Once housing is chosen, contracts are signed between the PHA and the landlord and the landlord and the tenant.  The tenant pays a percentage of his or her monthly income to the landlord towards the contract rent, and the PHA pays the difference.

Demand for vouchers exceeds their supply, and often long waiting lists develop.  A PHA may establish local preference for selecting applicants from its waiting list.  Vouchers are considered portable and can be used in or outside the issuing PHA's jurisdiction, including anywhere in the United States where a PHA administers this program, after the participant lives for at least one year in the issuing PHA's jurisdiction.

One can feel sympathy with Plaintiff's present position.  He is seriously disabled.  He and his mother participate in a Section 8 Program offered by the City of East Orange Housing Authority ("EOHA") which provides them with a two-bedroom apartment in East Orange, in

which they have been living for approximately eight years.  According to Plaintiff the EOHA abuses him and his mother, and the apartment is substandard.  Although Plaintiff and his mother could use their vouchers in Bayonne or another community, Plaintiff wants to live apart from his mother, as apparently conflicts have arisen between them, and he wants to live an independent life.  Further, Plaintiff wishes to live with his spouse and under present conditions they often have to sleep in his car.

At the hearing defense counsel advised that under the regulations Plaintiff and his mother could split their vouchers, but in that event each would receive a voucher for only one apartment.  That would leave no provision for accommodating Plaintiff's spouse.

Plaintiff sought to solve his problems by obtaining a housing voucher in Bayonne.  On October 5, 2009 he and his spouse, Ms. Sharmine N. Starr Johnson-Golden, filed an Application for Rental Assistance for the Housing Choice Voucher Program (the "Section 8 Voucher Program") with BHA.  In a separate letter Plaintiff sought on account of his and his spouse's disability "Reasonable Accommodations", specifically "special preference admissions from a waiting list."

On October 19, 2009 the BHA notified Plaintiff that his name had been placed on the waiting list for the Program administered through the BHA and advised him as to the status of the waiting list.  Applications that had been filed in the third quarter of 2006 were then being reviewed with first preference being given to Bayonne residents.  That would have subjected Plaintiff to a long wait.

Between October and December 2009 BHA assisted Plaintiff complete forms for his reasonable accommodation request and investigated his current status.  On December 23, 2009

BHA advised Plaintiff and Ms. Sharnise Starr-Johnson in writing that it would maintain their application on the waiting list, and confirmed that (1) Plaintiff was a participant in an HCVP administered by the EOHA, having been issued a two-bedroom voucher with his mother and residing with his mother at assisted premises located at 238 Tremont Avenue, East Orange; (2) concerning Plaintiff's request for a reasonable accommodation, BHA had received verification from the Social Security Administration ("SSA") that he is disabled but that there was no pending reasonable accommodation request for Ms. Starr-Johnson; and (3) because the SSA had not submitted any documents verifying that Plaintiff's requested "modifications" set forth in his October 5, 2009 letter request are related to his disability, there were no reasonable accommodations related to Plaintiff's disability pending at that time upon which BHA could act.

Further, the BHA letter advised Plaintiff that the various HUD regulations cited in his October 5, 2009 reasonable accommodation request concern the specific instances when a BHA may admit a family that is not on the BHA waiting list refer not to the status of the family, i.e., whether the family is disabled, etc., but rather to the status of the real property in which the applicant resides. The premises in which Plaintiff resided did not qualify under any of those instances.

BHA advised Plaintiff that he had a right to request an informal hearing to appeal the BHA's decision, and that such request must be addressed to the BHA's Executive Director within 10 days of receipt of the BHA's letter. He was also advised that additional administrative review would be available following the informal hearing if the BHA's decision remained the same.

Plaintiff did not pursue the appeal procedures. Rather, on January 22, 2010 he filed his

complaint in this action, and on March 26, 2010 he filed his motion for a preliminary injunction.

## II. Discussion

To qualify for preliminary injunctive relief a party must establish (1) a probability of success on the merits, (2) the moving party will suffer irreparable injury if the relief is not granted, (3) the non-moving party and other parties will not suffer countervailing injury if the relief is granted, and (4) whether the granting of the injunctive relief will be in the public interest.

Sympathetic as Plaintiff's position may be, it must be held at the outset that he has not established that he is likely to succeed on the merits.

In the first place, he has not exhausted his administrative remedies. He was advised of the route by which he could pursue an appeal of the denial of his request for a reasonable accommodation, namely, being placed at the head of the waiting list. He failed to appeal to BHA's Executive Director, and this precluded taking advantage of the further appeal available to him. There were no emergent circumstances that required that Plaintiff skip the internal appeal process, and his failure without more requires denial of injunctive relief. Exhaustion of administrative remedies is required both by statute, 42 U.S.C. § 12101, et seq. (see 28 C.F.R. § 35.172(b)), and for prudential reasons.

Further, on the merits, were the Plaintiff to have pursued his administrative appeal, the review would have resulted in an affirmance of the BHA's placement of Plaintiff on its waiting list and its denial of his application for a Section 504 Reasonable Accommodation Request to be granted a voucher forthwith ahead of those already on the waiting list.

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) provides:

> No otherwise qualified individual with a disability in the United

> States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA") closely resembles Section 504 and states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Claims under Section 504 and the ADA are subjected to the same analysis.

It is not disputed that Plaintiff is a handicapped or disabled person and that the BHA received federal financial assistance. He was not denied a voucher solely by reason of his disability. He was placed on the waiting list for a voucher in the same manner as any other applicant for a voucher. What he sought was preferential treatment in the form of being moved to the top of the BHA's waiting list ahead of any disabled or non-disabled applicants.

Under HUD regulations a public housing authority may admit an applicant with certain characteristics as a special admission from the waiting list. 24 C.F.R. § 982.202(b)(3). This is discretionary with the housing authority, an "[a]n applicant does not have any right or entitlement to be listed on the PHA waiting list, to any particular position on the waiting list, or to admission to the programs." 24 C.F.R. § 982.202(c). The regulation lists examples of circumstances that may warrant special admission, including families displaced because of the demolition or disposition of a public housing project, and families residing in a multifamily rental housing project when HUD sells, forecloses or demolishes. 24 C.F.R. § 982.203.

BHA has adopted an Administrative Plan for the Housing Choice Voucher Program (the "BHA Plan"). Chapter 4 of the BHA Plan governs the waiting list. It provides that "[a]ll applicants in the pool will be maintained in the order of preference. Applications equal in preference will be maintained by date and time sequence." Chapt. 4.A.2. There is provision for local preference, as permitted by HUD regulations, Chapt. 4, D and E, and there is provision for special admissions if HUD awards an Authority program funding that is targeted for specifically named families. Chapt. 4 B. There is, however, no provision in the BHA Plan that would enable a disabled person in Plaintiff's position to bypass the waiting list, cf. Robinson v. City of Friendswood, 890 F. Supp. 616, 621 (S.D. Tex. 1995) (FHAA does not permit disabled persons to circumvent the regulatory process for exceptions to zoning ordinances.)

The Court called to the parties' attention the sentence contained in Chapter 4H of the BHA Plan that reads: "It is a HUD requirement that elderly and disabled families and displaced singles will always be selected before other singles." It asked the parties what applicability this provision has to Plaintiff's situation. In their response Defendants contend that because Plaintiff is not a local Bayonne resident Chapter 4 in its entirety is not applicable to him, and even if it were, it would not warrant granting him the priority he seeks.

Under 34 C.F.R. § 982.207(a)(1) and (2) a PHA "may establish a system of local preferences for selection of families admitted to the program." The regulation requires the PHA to describe its selection preferences in its administrative plan. In accordance with this regulation the BHA adopted certain Local Preferences. Chapter 4(D) of the BHA Plans mandates Local Preferences will be used by BHA with respect to its waiting list:

> Local preferences will be used to select among applicants on the

>waiting list without regard to federal preferences. A public hearing was held to adopt local preferences.
>
>The Authority uses the following Local Preferences:
>
>>Residency preference for families who live, work, or have been hired to work or who are attending school in the jurisdiction.

Within the Local Preferences the BHA Plan sets forth Local Preference Categories (4E) and Order of Selection (4H). It is Subsection 4H that contains the provision that might, in isolation, be construed to give a preference to disabled persons generally: "It is a HUD requirement that elderly and disabled families and displaced singles will always be selected before other singles." However, in the same Subsection under the title "Local Preferences" there appears the mandate that "Local preferences will be used to select families from the waiting list."

The structure of the BHA Plan and its language, including the language of Chapter 4(H), make it abundantly clear that Chapter 4(H) does not apply to Plaintiff. It applies only to persons entitled to a Local Preference, and because Plaintiff does not live in, work in, has not been hired to work in, and is not attending school in Bayonne, he is not entitled to a Local Preference.

The cases that Plaintiff cites in support of his position are not to the contrary. For example in Green v. Housing Authority of Arkansas County, 994 F. Supp. 1253 (D. Or. 1998), the Plaintiffs alleged that the Housing Authority violated the ADA and Section 504 by failing to reasonably accommodate their request for a waiver of their "no pets" policy to allow for a hearing assistance animal in the rental unit to reasonably accommodate a hearing disability. The district court granted plaintiff's motion for summary judgment, holding that the plaintiff in question was disabled and that failing to waive the "no pets" policy was a failure to reasonably

8

accommodate her disability.  That case differs from the instant case in that the plaintiff there was already admitted to the housing authority and was challenging a regulation that, because of her disability, prevented her from occupying it safely.  In the present case Plaintiff seeks to obtain the housing choice voucher which he does not have.  The regulations do not preclude him from obtaining the voucher because of his disability; they preclude him from obtaining it because others have a prior right to it.

Thus Plaintiff cannot satisfy the first criterion for obtaining a preliminary injunction - likelihood of success on the merits.   Apart from the fact that he has not exhausted his administrative remedies, he has not shown that he was denied a housing voucher or denied a request to be placed at the head of the waiting list in violation of Section 504 of the Rehabilitation Act or Title II of the ADA.  Neither Title III of the ADA nor the Fair Housing Amendments Act is applicable to Plaintiff's request for a housing voucher or placement at the head of the waiting list.  Because no federal constitutional or other federal law has been violated, 42 U.S.C. § 1963 is not applicable.

It is also a question whether Plaintiff suffers irreparable harm by reason of his failure to obtain this relief.  He and his mother already have a housing voucher issued by the City of East Orange.  It is true that personal difficulties between himself and his mother seem to have arisen; the landlord has been abusive; and Plaintiff and his mother cannot accommodate Plaintiff's spouse in their two bedroom apartment.  However, they have the voucher and the apartment.  It would seem that there may be ways by which they could accommodate their needs through resort to the East Orange Housing Authority.

Granting the injunction Plaintiff seeks would injure at least one other party - the person or

family next in line for a voucher.  The public has an interest in maintaining the integrity of the voucher waiting list.  Unless the list is maintained strictly in accordance with the BHA Plan, there is the danger that the list will be corrupted through political and other pressures.

### III.  Conclusion

For the foregoing reasons the court concludes that Plaintiff has not established entitlement to the preliminary injunction he seeks, and his motion will be denied.  The court will file an order implementing this opinion.


May 7, 2010                                             *s/ Dickinson R. Debevoise*
                                                                           DICKINSON R. DEBEVOISE
                                                                              U.S.S.D.J.