**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SAMAD H. CASTRO,

    Plaintiff,

v.

BAYONNE HOUSING AUTHORITY,
TRICIA O'BRIEN, JOHN T. MAHON,

    Defendants.

Civ. No. 10-403(DRD)

**O P I N I O N**

Mr. Samad H. Castro
238 Tremont Avenue
East Orange, NJ 07018

    *Pro Se*

DeCotiis, Fitzpatrick & Cole, LLP
by: Dawn Attwood, Esq. and Irene Stavrellis, Esq.
Glenpointe Centre West, Suite 31
500 Frank W. Burr Boulevard
Teaneck, NJ 07666

    *Attorneys for Defendants*

**Debevoise, Senior District Court Judge**

On January 22, 2010 Plaintiff, Samad H. Castro, filed a complaint against the Bayonne Housing Authority ("BHA") and two of its officers, Tricia O'Brien and John T. Mahon. He alleges that Defendants unlawfully discriminated against him on account of his disabilities when, upon his request for a Section 8 Housing Voucher, it failed to put him at the head of the applicant list.

Plaintiff moved for a preliminary injunction compelling Defendants "to provide him immediately, an exemption or exclusion from the defendants' Housing Choice program waiting list, a two (2) bedroom Housing Choice Voucher." In an Opinion dated May 7, 2010, this court denied Plaintiff's motion for a preliminary injunction because he had not exhausted his administrative remedies and had not shown that Defendants unlawfully discriminated against him.

On July 8, 2010 Defendants filed a motion for summary judgment. On August 17, 2010, Plaintiff filed a cross-motion for leave to amend his complaint. For the reasons set forth below, Plaintiff's cross-motion for leave to amend his complaint will be denied, Defendant's motion for summary judgment will be granted, and Plaintiff's complaint will be dismissed with prejudice.

## I. Background[1]

The Section 8 Housing Choice Voucher Program ("HCVP") is a federal government program for assisting low income families in obtaining affordable housing. Participants choose housing that meets the requirements of the program. Housing choice vouchers are administered locally by public housing agencies ("PHAs"), such as BHA, or through the New Jersey Department of Community Affairs. The PHAs receive federal funding from the United States

---

[1] The facts of this case and the merits of Plaintiff's claims were detailed in this court's Opinion dated May 7, 2010. Much of that Opinion is repeated herein.

Department of Housing and Urban Development ("HUD") to administer the voucher program. Once housing is chosen, contracts are signed between the PHA and the landlord and the landlord and the tenant. The tenant pays a percentage of his or her monthly income to the landlord towards the contract rent, and the PHA pays the difference.

Demand for vouchers exceeds their supply, and often long waiting lists develop. A PHA may establish local preference for selecting applicants from its waiting list. Vouchers are considered portable and can be used in or outside the issuing PHA's jurisdiction, including anywhere in the United States where a PHA administers this program, after the participant lives for at least one year in the issuing PHA's jurisdiction.

One can feel sympathy with Plaintiff's present position. He is seriously disabled. He and his mother participate in a Section 8 Program offered by the City of East Orange Housing Authority ("EOHA") which provides them with a two-bedroom apartment in East Orange, in which they have been living for approximately eight years. According to Plaintiff the EOHA abuses him and his mother, and the apartment is substandard. Although Plaintiff and his mother could use their vouchers in Bayonne or another community, Plaintiff wants to live apart from his mother, as apparently conflicts have arisen between them, and he wants to live an independent life. Further, Plaintiff wishes to live with his spouse and under present conditions they often have to sleep in his car.

At the hearing defense counsel advised that under the regulations Plaintiff and his mother could split their vouchers, but in that event each would receive a voucher for only one apartment and, apparently, Plaintiff's apartment could not accommodate Plaintiff's spouse.

Plaintiff sought to solve his problems by obtaining a housing voucher in Bayonne. On October 5, 2009 he and his spouse, Ms. Sharnise N. Starr Johnson-Golden, filed an Application

3

for Rental Assistance for the Housing Choice Voucher Program (the "Section 8 Voucher Program") with BHA. In a separate letter Plaintiff sought on account of his and his spouse's disability "Reasonable Accommodations", specifically "special preference admissions from a waiting list."

On October 19, 2009 the BHA notified Plaintiff that his name had been placed on the waiting list for the Program administered through the BHA and advised him as to the status of the waiting list. Applications that had been filed in the third quarter of 2006 were then being reviewed with first preference being given to Bayonne residents. That would have subjected Plaintiff to a long wait.

Between October and December 2009 BHA assisted Plaintiff in completing forms for his reasonable accommodation request and investigated his current status. On December 23, 2009 BHA advised Plaintiff and Ms. Johnson-Golden in writing that it would maintain their application on the waiting list, and confirmed that (1) Plaintiff was a participant in an HCVP administered by the EOHA, having been issued a two-bedroom voucher with his mother and residing with his mother at assisted premises located at 238 Tremont Avenue, East Orange; (2) concerning Plaintiff's request for a reasonable accommodation, BHA had received verification from the Social Security Administration ("SSA") that he is disabled but that there was no pending reasonable accommodation request for Ms. Johnson-Golden; and (3) because the SSA had not submitted any documents verifying that Plaintiff's requested "modifications" set forth in his October 5, 2009 letter request are related to his disability, there were no reasonable accommodations related to Plaintiff's disability pending at that time upon which BHA could act.

Further, the BHA letter advised Plaintiff that the various HUD regulations cited in his October 5, 2009 reasonable accommodation request concern the specific instances when a BHA

4

may admit a family that is not on the BHA waiting list refer not to the status of the family, i.e., whether the family is disabled, etc., but rather to the status of the real property in which the applicant resides. The premises in which Plaintiff resided did not qualify under any of those instances.

BHA advised Plaintiff that he had a right to request an informal hearing to appeal the BHA's decision, and that such request must be addressed to the BHA's Executive Director within 10 days of receipt of the BHA's letter. He was also advised that additional administrative review would be available following the informal hearing if the BHA's decision remained the same. Plaintiff did not pursue the appeal procedures, choosing instead to file a complaint in this court.

## II. Discussion

### A. Standard for Leave to Amend under Fed. R. Civ. P. 15(a)(2):

Under Rule 15(a)(2), a party should be granted leave to amend its pleading when justice so requires. The Third Circuit has consistently held that "leave to amend should be granted freely . . . and court[s] should use 'strong liberality' in considering whether to grant leave to amend." Dole v. Arco Chemical Co., 921 F.2d 484, 486-487 (3d Cir. 1990)(citations omitted). Such an approach ensures that a claim will be decided on the merits rather than on technicalities. Id. However, such liberality is not limitless. Several factors weigh against granting leave to amend. Those factors include, undue delay, bad faith, undue prejudice and futility of amendment.

Futility of amendment is defined as the inability to survive a motion to dismiss. Oran v. Stafford, 226 F. 3d 275, 291 (3d Cir. 2000). Thus evaluating futility involves application of the same standard of legal sufficiency that applies under Rule 12(b)(6).

That rule permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims."  In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases:  Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007).  The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one

6

or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

**B. Plaintiff's Proposed Amendments to his Complaint:**

On August 17, 2010 Plaintiff filed a document entitled "Summary Proposal on Motion to Leave and Amend Complaint and Add Defendants." The document is generally incomprehensible. Although it cites to, and quotes long passages of, a variety of legal sources, including numerous Articles of, and Amendments to, the United States Constitution, the Federal RICO Act, the Federal Tort Claims Act, the Magna Carta, and twenty different United Nations Declarations, Covenants, and/or Treaties, the document does not articulate any cognizable claims, nor does it name any additional defendants to be added.

Further analysis is unnecessary. It is clear that allowing Plaintiff to amend his complaint would be futile. Thus, Plaintiff's cross-motion for leave to amend his complaint will be denied. The merits of Plaintiff's original complaint are addressed below.

**C. Summary Judgment Standard under Fed. R. Civ. P. 56(c)(2):**

Summary judgment is proper where "there is no genuine issue as to any material fact and … the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For

a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine fact issue exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate. Id. at 251-52.

**D. Plaintiff's Complaint:**

Sympathetic as Plaintiff's position may be, it must be held at the outset that he has not exhausted his administrative remedies. He was advised of the route by which he could pursue an appeal of the denial of his request for a reasonable accommodation, namely, being placed at the head of the waiting list. He failed to appeal to BHA's Executive Director, and this precluded

8

taking advantage of the further appeal available to him.  There were no emergent circumstances that required that Plaintiff skip the internal appeal process, and his failure, without more, warrants dismissal.  Exhaustion of administrative remedies is required both by statute, 42 U.S.C. § 12101, et seq. (see 28 C.F.R. § 35.172(b)), and for prudential reasons.

Regardless, Plaintiff's claims fail on the merits.  Were the Plaintiff to have pursued his administrative appeal, the review would have resulted in an affirmance of the BHA's placement of Plaintiff on its waiting list and its denial of his application for a Section 504 Reasonable Accommodation Request to be granted a voucher forthwith ahead of those already on the waiting list.

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA") closely resembles Section 504 and states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  Claims under Section 504 and the ADA are subjected to the same analysis.

It is not disputed that Plaintiff is a handicapped or disabled person and that the BHA received federal financial assistance.  He was not denied a voucher solely by reason of his disability.  He was placed on the waiting list for a voucher in the same manner as any other applicant for a voucher.  What he sought was preferential treatment in the form of being moved to the top of the BHA's waiting list ahead of any disabled or non-disabled applicants.

Under HUD regulations a public housing authority may admit an applicant with certain characteristics as a special admission from the waiting list. 24 C.F.R. § 982.202(b)(3). This is discretionary with the housing authority, "[a]n applicant does not have any right or entitlement to be listed on the PHA waiting list, to any particular position on the waiting list, or to admission to the programs." 24 C.F.R. § 982.202(c). The regulation lists examples of circumstances that may warrant special admission, including families displaced because of the demolition or disposition of a public housing project, and families residing in a multifamily rental housing project when HUD sells, forecloses or demolishes. 24 C.F.R. § 982.203.

BHA has adopted an Administrative Plan for the Housing Choice Voucher Program (the "BHA Plan"). Chapter 4 of the BHA Plan governs the waiting list. It provides that "[a]ll applicants in the pool will be maintained in the order of preference. Applications equal in preference will be maintained by date and time sequence." Chapt. 4.A.2. There is provision for local preference, as permitted by HUD regulations, Chapt. 4, D and E, and there is provision for special admissions if HUD awards an Authority program funding that is targeted for specifically named families. Chapt. 4 B. There is, however, no provision in the BHA Plan that would enable a disabled person in Plaintiff's position to bypass the waiting list, cf. Robinson v. City of Friendswood, 890 F. Supp. 616, 621 (S.D. Tex. 1995) (FHAA does not permit disabled persons to circumvent the regulatory process for exceptions to zoning ordinances.)

The Court called to the parties' attention the sentence contained in Chapter 4H of the BHA Plan that reads: "It is a HUD requirement that elderly and disabled families and displaced singles will always be selected before other singles." It asked the parties what applicability this provision has to Plaintiff's situation. In their response Defendants contend that because Plaintiff

10

is not a local Bayonne resident Chapter 4 in its entirety is not applicable to him, and even if it were, it would not warrant granting him the priority he seeks.

Under 34 C.F.R. § 982.207(a)(1) and (2) a PHA "may establish a system of local preferences for selection of families admitted to the program." The regulation requires the PHA to describe its selection preferences in its administrative plan. In accordance with this regulation the BHA adopted certain Local Preferences. Chapter 4(D) of the BHA Plans mandates Local Preferences will be used by BHA with respect to its waiting list:

> Local preferences will be used to select among applicants on the waiting list without regard to federal preferences. A public hearing was held to adopt local preferences.

The Authority uses the following Local Preferences:

> Residency preference for families who live, work, or have been hired to work or who are attending school in the jurisdiction.

Within the Local Preferences the BHA Plan sets forth Local Preference Categories (4E) and Order of Selection (4H). It is Subsection 4H that contains the provision that might, in isolation, be construed to give a preference to disabled persons generally: "It is a HUD requirement that elderly and disabled families and displaced singles will always be selected before other singles." However, in the same Subsection under the title "<u>Local Preferences</u>" there appears the mandate that "Local preferences will be used to select families from the waiting list."

The structure of the BHA Plan and its language, including the language of Chapter 4(H), make it abundantly clear that Chapter 4(H) does not apply to Plaintiff. It applies only to persons entitled to a Local Preference, and because Plaintiff does not live in, work in, has not been hired to work in, and is not attending school in Bayonne, he is not entitled to a Local Preference.

The cases that Plaintiff cites in support of his position are not to the contrary. For example in <u>Green v. Housing Authority of Arkansas County</u>, 994 F. Supp. 1253 (D. Or. 1998),

11

the plaintiff alleged that the Housing Authority violated the ADA and Section 504 by failing to reasonably accommodate her request for a waiver of their "no pets" policy to allow for a hearing assistance animal in the rental unit to reasonably accommodate a hearing disability. The district court granted plaintiff's motion for summary judgment, holding that the plaintiff in question was disabled and that failing to waive the "no pets" policy was a failure to reasonably accommodate her disability. That case differs from the instant case in that the plaintiff there was already admitted to the housing authority and was challenging a regulation that, because of her disability, prevented her from occupying it safely. In the present case Plaintiff seeks to obtain the housing choice voucher which he does not have. The regulations do not preclude him from obtaining the voucher because of his disability; they preclude him from obtaining it because others have a prior right to it.

Thus, as a matter of law, Plaintiff's claims must fail. Apart from the fact that he has not exhausted his administrative remedies, he has not shown that he was denied a housing voucher or denied a request to be placed at the head of the waiting list in violation of Section 504 of the Rehabilitation Act or Title II of the ADA. Neither Title III of the ADA nor the Fair Housing Amendments Act is applicable to Plaintiff's request for a housing voucher or placement at the head of the waiting list. Because no federal constitutional or other federal law has been violated, 42 U.S.C. § 1983 is not applicable.

## III. Conclusion

For the reasons set forth above, Plaintiff's cross-motion for leave to amend his complaint will be denied, Defendants' motion for summary judgment will be granted, and Plaintiff's complaint will be dismissed with prejudice. The court will file an order implementing this opinion.

s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: November 22, 2010